IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Concepta Business Solutions, LLC, *et al.*, | Case No. 1:16-cv-438 |
| Plaintiffs, | |
| | Judge Susan J. Dlott |
| v. | |
| Cogent Analytics, LLC f/k/a Braiman & Associates, LLC, *et al.*, | Order |
| Defendants. | |

This matter is before the Court on the following filings: Plaintiffs' Motion to Dismiss Pursuant to FRCP 41(a)(2) filed by HCMM, Inc., Ripberger, Maguire & Matthews, Inc., and Patrick Maguire (the "Ohio Plaintiffs") (Doc. 53); Plaintiffs' Motion to Dismiss Pursuant to FRCP 41(a)(2) filed by Concepta Business Solutions, LLC and David Pineda (the "Florida Plaintiffs") (Doc. 54); and Defendants' Motion for Attorneys' Fees and Costs (Doc. 55). The Court **GRANTS** each Motion on the terms set forth herein.

## I.     PROCEDURAL HISTORY

1.      Plaintiff HCMM, Inc. ("HCMM") sued Defendant Bret Tubergen ("Tubergen") in the Hamilton County, Ohio Court of Common Pleas on February 9, 2016. That action was removed to this Court by Tubergen on February 11, 2016. HCMM filed a voluntary dismissal pursuant to Fed. R. Civ. P. 41(a) the next day. See HCMM, Inc. v. Tubergen, Case No. 1:16-cv-00302 (S.D. Ohio filed Feb. 11, 2016).

2.      Plaintiffs then filed this lawsuit on March 29, 2016 asserting nineteen claims against Defendants Cogent Analytics, LLC, Robert D. Braiman, Robin Braiman, Bret Tubergen,

Gerald C. Williams, and William Shapcott ("Defendants") (Doc. 1) and seeking a Temporary Restraining Order, Preliminary and Permanent Injunctive Relief, and money damages.

3.      In this action, Plaintiffs claim that Defendants were misappropriating five trade secrets from Huntington, Copper, Moody & Maguire, Inc. ("Huntington Copper") and/or HCMM, both Ohio companies, and two trade secrets from Concepta Business Solutions, LLC ("Concepta").  The alleged trade secrets were identified as the following seven items:

        a.      Huntington Copper's 2010 Financial Information;

        b.      Huntington Copper's and HCMM's sales pitch (the "Pitch");

        c.      Huntington Copper's and HCMM's sales documents (the "Documents");

        d.      Huntington Copper's alleged analytical software ("FACS");

        e.      Huntington Copper's alleged sales software ("SPEED");

        f.      Concepta's alleged analytical software ("CBSA"); and

        g.      Concepta's alleged sales software ("SPEED VanillaSoft").[1]

4.      Since the beginning of this litigation, Plaintiffs have maintained that this case is about these alleged trade secrets. (See, e.g., Memorandum of Law in Support of Motion to Disqualify at 14, Doc. 12 at PageID 360).

5.      On March 30, 2016, the Court held a hearing on Plaintiffs' request for a Temporary Restraining Order.  The Court denied Plaintiffs' request for a Temporary Restraining Order and set a Status Conference for June 6, 2016 and a Preliminary Injunction Hearing for July 7, 2016.  (Minute Order dated March 30, 2016.)  The Court also allowed the parties to engage in expedited discovery in preparation for the Preliminary Injunction Hearing.

---

[1] VanillaSoft is available to the public for purchase online at vanillasoft.com.

6.      On April 14, 2016, Plaintiff David Pineda moved to disqualify Defendants' counsel. (Doc. 12.) The Court denied that Motion on June 23, 2016. (Doc. 32.)

7.      On May 24, 2016, Defendant Robin Braiman filed a Motion to Dismiss for Lack of Personal Jurisdiction. (Doc. 19.) That Motion has been fully briefed. (Docs. 26, 31.)

8.      On May 31, 2016, all Defendants other than Robin Braiman filed Answers to the Complaint. (Docs. 21, 22, 23, 24 & 25.) In addition, Tubergen filed a counterclaim against HCMM based on unpaid commissions. That counterclaim remains pending.

9.      On June 6, 2016, the Court held a Status Conference. At that Status Conference, the Court reset the Preliminary Injunction Hearing for August 8, 2016. (Minute Entry dated June 6, 2016.)

10.     On June 17, 2016, Defendants filed a Motion for Judgment on the Pleadings as to all claims asserted by Plaintiff David Pineda. (Doc. 30.) In arguing to the Court that Defendants' counsel should be disqualified, Plaintiff Pineda contended that he had asserted claims under seven counts of the Complaint. (Reply Memorandum in Support of Motion of Plaintiff Pineda to Disqualify Counsel at 11, Doc. 18 at PageID 623.) However, in opposing the Motion for Judgment on the Pleadings, Plaintiff Pineda then took the position—without explanation—that he had only asserted two claims in this action. (Memorandum in Opposition to Defendants' Motion for Judgment on the Pleadings at 1, Doc. 33 at PageID 934.) That Motion has been fully briefed. (Docs. 33, 37.)

11.     Over four days during the week of June 20, 2016, and following expedited written discovery, the depositions of Plaintiff David Pineda, Plaintiff Patrick Maguire, Plaintiff HCMM's President Julie Maguire, and Jeff Bittner, a former employee of all three corporate Plaintiffs, were partially completed. Despite claiming in this case that their alleged trade secrets

are in issue, and despite their alleged trade secrets having been discussed at length in Plaintiffs' depositions, Plaintiffs nonetheless filed the unredacted and unsealed transcripts of those depositions, in their entirety, on August 16 and 17, 2016. (Docs. 39, 41, 43 & 45.) On July 5, 2016, Plaintiffs filed a Motion to Continue the August 8, 2016 Preliminary Injunction Hearing. (Doc. 34.) The Court granted the Motion to Continue and continued the Preliminary Injunction Hearing to the week of October 17, 2016. (Docs. 35 & 36.)

12.     On August 15, 2016, Plaintiffs filed a Motion for Leave to File First Amended Verified Complaint. (Doc. 38.) In their Motion, Plaintiff sought to: (1) remove a number of Plaintiffs' own claims from the case – particularly including a number of their trade secret allegations; (2) remove Robin Braiman from the case completely by not including her as a Defendant in their Proposed Amended Complaint; and (3) continue forward with a number of previously alleged claims. More specifically, in that Motion, Plaintiffs represented to the Court the following:

> Through the course of … depositions, it became clear that Plaintiffs would have difficulty establishing the trade secret status of some of the documents and information as alleged in Plaintiffs' Verified Complaint. Specifically, the ability to advance the claims regarding SPEED, FACS, CBSA, the Pitch, and Documents was called into question by [Plaintiffs' own] deposition testimony….

(Memorandum in Support of Motion for Leave at 5, Doc. 38 at PageID 969 (internal citations omitted).)

13.     On August 30, 2016, Defendants filed a Motion for Status Conference to address certain issues related to the effect, if any, of Plaintiffs' Motion for Leave to File First Amended Verified Complaint on the upcoming schedule of hearings, briefing, and discovery. (Docs. 47 & 47-1.)

14.     On September 2, 2016, the Court entered a text order staying the deadlines to respond to any pending motion.  During a telephonic Status Conference on September 7, 2016, the Court converted the Preliminary Injunction Hearing scheduled for October 17, 2016 into a Settlement Conference.

15.     On September 30, 2016, G. Antonio Anaya, at that time counsel for Plaintiffs, filed a Motion to Withdraw as Trial Counsel for Plaintiffs.  (Doc. 51.)  The stated basis for Mr. Anaya's Motion was that it was "imperative" that he withdraw in order to "maintain compliance with the Ohio Rules of Professional Conduct."  (Doc. 51 at PageID 2248.)  Mr. Anaya's Affidavit in support of the Motion to Withdraw was filed under seal.

16.     The Court held an *ex parte* conference with Mr. Anaya on October 11, 2016 to address the evidentiary support for his Motion.  During that Conference, Mr. Anaya advised the Court that the basis for his request to withdraw was irreconcilable differences with his clients.

17.     On October 13, 2016, the Court entered its Order Granting G. Antonio Anaya's Motion to Withdraw as Counsel for Plaintiffs.  (Doc. 52.)  In addition, that Order granted Plaintiffs sixty (60) days—until December 12, 2016—to either obtain new counsel or, for the individual Plaintiffs, to opt to represent themselves.  The Order required Plaintiffs to file either a Notice of Appearance or Notice of *Pro Se* Representation depending on which option was selected and further provided that, if no such Notice was received, the claims asserted by that party would be dismissed.

18.     On December 12, 2016, the Ohio Plaintiffs' filed a Motion to Dismiss their own claims pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure.  (Doc. 53.)  The stated basis for the Motion to Dismiss was that, although attorneys would be willing to pursue their claims on an hourly basis, the Ohio Plaintiffs had not found any attorney willing to pursue their

claims on a contingency fee basis.  The Ohio Plaintiffs also represented to the Court that they had approached Defendants' counsel to request that the parties stipulate to dismissal, but that they had been unable to reach agreement on a stipulation.

19.     On December 20, 2016, and more than a week after the Court's deadline, the Florida Plaintiffs[2] filed a nearly identical Motion to Dismiss.  (Doc. 54.)

20.     On December 28, 2016, Defendants filed their Motion for Attorneys' Fees and Costs.  (Doc. 55.)  In support of that Motion, Defendants filed Declarations signed by Robert D. Braiman (Doc. 57), Bret Tubergen (Doc. 58), Gerald C. Williams (Doc. 59), David Drylie (Doc. 60), and Jeffrey S. Southerland (Doc. 61).

21.     On January 5, 2017, the Court entered a Notice of Hearing setting a Settlement Conference for February 16, 2017.

22.     On January 24, 2017, the Florida Plaintiffs[3] filed a Motion for Additional Time to Respond to Defendants' Motion for Attorneys' Fees and Costs, which they refer to as a Motion for Sanctions.  (Doc. 66.)  They asked the Court for an extension of time "until after the settlement conference to respond."  (Id. at PageID 2316.)

23.     A Settlement Conference was held on February 16, 2017.  In attendance were Patrick Maguire, Julie Maguire, and David Pineda, as well as Robert Braiman and counsel on behalf of Defendants.  Instead of engaging in the settlement process, Mr. and Mrs. Maguire and Mr. Pineda wasted the time and resources of the Court and Defendants.

---

[2] The body of the Motion lists **Sandra** Pineda as a Plaintiff, along with Concepta Business Solutions, LLC and David Pineda.  (Doc. 54 at PageID 2258.)  **Sandra** Pineda, however, is not a named Plaintiff in this civil action.  (Doc. 1 at PageID 1.)
[3] Again, as with their Motion to Dismiss (Doc. 54), the body of the Motion for Additional Time lists **Sandra** Pineda as a Plaintiff, along with Concepta Business Solutions, LLC and David Pineda.  (Doc. 66 at PageID 2316.)  **Sandra** Pineda, however, is not a named Plaintiff in this civil action.  (Doc. 1 at PageID 1.)

24.     At that Settlement Conference, the Court advised Mr. and Mrs. Maguire and Mr. Pineda that the Court intended to grant Defendants' Motion for Attorneys' Fees and Costs.

25.     On February 20, 2017—more than two months after the deadline to retain new counsel—the Ohio Plaintiffs had their current counsel[4] file three Motions on their behalf: (1) a Motion for Additional Time to Respond to Defendants' Motion for Attorneys' Fees and Costs, which they refer to as a Motion for Sanctions (Doc. 67); (2) a Motion for a Hearing regarding same (Doc. 68); and (3) a Motion to Enforce Settlement (Doc. 69).

26.     On February 22, 2017, the Court entered an Order setting a briefing schedule on the pending Motion for Attorneys' Fees and Costs.  (Doc. 70.)

27.     Pursuant to the February 22, 2017 Order, Defendants timely filed their time records and supplemental brief on March 8, 2017.  (Doc. 72.)

28.     On March 28, 2017, the Ohio Plaintiffs filed their Memorandum in Opposition to Defendants' Motion for Attorneys' Fees and Costs, which they refer to as a Motion for Sanctions.  (Doc. 75.)  Instead of addressing Defendants' Motion for Attorneys' Fees and Costs on the merits, the response is limited to an attempt to place blame on their former counsel and to argue that an award of fees under Rule 41 of the Federal Rules of Civil Procedure is not warranted.  A nearly identical pleading was filed the next day, March 29, 2017, correcting its caption to read "Plaintiffs' Memorandum in Opposition to Defendants' Motion for **Attorneys' Fees and Costs**." (Doc. 76 (emphasis added).)

---

[4] At the Court's direction (see Doc. 70 at 2348 n.2), attorney Mark C. Collins filed a Notice of Appearance on behalf of Plaintiffs HCMM, Inc., Ripberger, Maguire & Matthews, Inc., and Patrick Maguire.  (Doc. 71.)

29.     On April 3, 2017, after the deadline established by the Court, the Florida Plaintiffs[5] filed a letter with the Clerk representing that they had retained new counsel and requesting a ten-day extension of time.  (Doc. 77.)  On April 7, 2017, the Court granted the Florida Plaintiffs' request.

30.     Well after the ten-day extension of time had lapsed, on May 2, 2017 Florida Plaintiff David Pineda[6] filed a Notice of *Pro Se* Appearance.  (Doc. 79.)  Accompanying the Notice was a letter to the Clerk, advising of "delays in the form of multiple conflict searches, attorneys subsequently conflicted out, or an inability to litigate in the Southern District of Ohio." (Id. at PageID 2426.)  The letter further indicates that "acquiring appropriate local counsel will likely happen as soon as this week."  (Id.)  To date, no attorney has filed an appearance on behalf of the Florida Plaintiffs.

31.     On May 2, 2017, Plaintiff David Pineda also filed a response in opposition to Defendants' Motion for Attorneys' Fees and Costs, which Plaintiff Pineda refers to as a Motion for Sanctions.  (Doc. 80.)

---

[5]Again, as with previous Motions (see Docs. 54, 66), the body of the Motion for Additional Time lists **Sandra** Pineda as a Plaintiff, along with Concepta Business Solutions, LLC and David Pineda.  (Doc. 77 at PageID 2396.)  **Sandra** Pineda, however, is not a named Plaintiff in this civil action.  (Doc. 1 at PageID 1.)

[6] The body of the Notice refers to "Plaintiffs," and lists **Sandra** Pineda as well as David Pineda.  (Doc. 79 at PageID 2424.)  Of the two (see supra at nn.2–3, 5), only David Pineda is a named Plaintiff, along with Concepta Business Solutions, LLC, in this civil action.  (Doc. 1 at PageID 1.)

## II.     ANALYSIS

### A.     Defendants' Motion for Attorneys' Fees and Costs

Defendants have requested that the Court enter sanctions against Plaintiffs pursuant to the Court's inherent authority.[7]  A court may assess attorneys' fees under its inherent power "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991) (internal quotation and citation omitted).  A court may invoke its inherent power to sanction bad faith conduct if it finds: "[1] that the claims advanced were meritless, [2] that counsel knew or should have known this, and [3] that the motive for filing the suit was for an improper purpose such as harassment." First Bank of Marietta v. Hartford Underwriters Ins. Co., 307 F.3d 501, 512 (6th Cir. 2002) (internal quotation and citations omitted) (affirming award of attorneys' fees based on court's inherent power where plaintiff advanced claim with no colorable basis and acted in bad faith in filing and prosecuting the claim).  The requirement that "a court find that a party have an improper purpose in filing a suit resembles the Supreme Court's general requirement that a court find bad faith or conduct tantamount to bad faith." BDT Prods., Inc. v. Lexmark Int'l, Inc., 602 F.3d 742, 752 (6th Cir. 2010).

In support of their Motion for Attorneys' Fees and Costs, Defendants submitted the Declarations of Robert D. Braiman, Bret Tubergen, Gerald C. Williams, David Drylie, and Jeffrey S. Southerland.  In addition to those Declarations, the Court relies on the deposition transcripts filed by Plaintiffs on August 16 and 17, 2016, the procedural history previously set

---

[7] Defendants also requested that the Court dismiss Plaintiffs' claims with prejudice and that there be a determination that Defendants are the prevailing parties.  Because the Court has determined that Plaintiffs' conduct throughout this litigation warrants sanctions under the Court's inherent authority, the Court does not address Defendants' alternative argument for fees and costs.

forth, and other matters of record in making the following findings of fact and conclusions of law.

### (i)    Findings of Fact

1.      The Court finds that Plaintiffs filed and have continued to pursue this litigation for improper purposes, including, but not limited to, harassing Defendants and otherwise attempting to injure Defendants' business interests.

2.      More specifically, HCMM and Patrick Maguire threatened and pursued litigation against Tubergen without basis.  During a sales conference call, and more than two months before HCMM filed suit against Tubergen, Patrick Maguire told Tubergen that he "was going to retire off of" the forthcoming litigation against Cogent, that Tubergen "better not" go work for Cogent because Maguire was going to put Cogent out of business, and that Maguire and another company were both going to sue and "destroy" Cogent.  (Tubergen Decl. ¶ 4, Doc. 58 at PageID 2288.)

3.      On February 2, 2016, Patrick Maguire, through counsel, sent an email to Tubergen that once again threatened legal action if Tubergen did not accept HCMM's offer to rehire him.  (Tubergen Decl. ¶ 6, Doc. 58 at PageID 2289; Doc. 58-1 at PageID 2293-94.)  That email indicated, in part, that Maguire had hired Plaintiffs' former counsel to handle the forthcoming litigation and that counsel had been paid a "retainer for 400 hours in advance." (Tubergen Decl. ¶ 6, Doc. 58 at PageID 2289; Doc. 58-1 at PageID 2293.)  Reiterating the threat of litigation against Tubergen, Maguire stated that "having your name on the internet stinks" and "if your name is on the internet in connection with a lawsuit, I'm not sure I could justify the 100K signing bonus."  (Tubergen Decl. ¶ 6, Doc. 58 at PageID 2289; Doc. 58-1 at PageID 2293-94.)

4.      Plaintiff HCMM sued Tubergen in the Hamilton County, Ohio Court of Common

Pleas on February 9, 2016.  That action was removed to this Court by Tubergen on February 11,

2016.  HCMM filed a voluntary dismissal the next day. <u>See</u> <u>HCMM, Inc. v. Tubergen</u>, Case No.

1:16-cv-00302 (S.D. Ohio filed Feb. 11, 2016).

5.      The Complaint in <u>HCMM, Inc. v. Tubergen</u>, Case No. 1:16-cv-00302 (S.D. Ohio

Feb. 11, 2016) demonstrates that Plaintiffs were already planning litigation against Cogent,

Braiman, and the other Defendants.  (<u>See</u> Complaint ¶¶ 23-35, Doc. 1-3 at PageID 14-16.)

6.      Plaintiffs then filed this lawsuit on March 29, 2016, asserting nineteen claims

against Defendants and seeking a Temporary Restraining Order, Preliminary and Permanent

Injunctive Relief, and money damages.

7.      On March 30, 2016, the Court held a hearing on Plaintiffs' request for a

Temporary Restraining Order.  The Court orally denied Plaintiffs' request for a Temporary

Restraining Order.

8.      On April 14, 2016, Plaintiff David Pineda moved to disqualify Defendants'

counsel. (Doc. 12.)  The Court denied that Motion on June 23, 2016.  (Doc. 32.)

9.      Thereafter, Plaintiffs requested that the Court postpone a hearing on their request

for preliminary relief.  (Doc. 34.)

10.      On June 1, 2016, Plaintiffs' then-counsel G. Antonio Anaya wrote to counsel for

another competitor in the consulting business in Illinois and advised that the "timing [was] good"

for the Illinois party to file its lawsuit against Cogent and the other Defendants.  That

communication between Mr. Anaya and the lawyer for International Services, Inc. was a

culmination and continuation of Maguire's pre-suit statements to Tubergen that Maguire and

another company were planning to file lawsuits to take down Cogent. (Braiman Decl. ¶ 4, Doc. 57 at PageID 2283; Doc. 57-1 at PageID 2287.)

11.     Plaintiffs have presented no evidence to support their misappropriation of trade secrets claim and, in fact, their own deposition testimony undermines any such claim. By way of example, Maguire testified that the bankruptcy trustee for Profit Systems International gave him FACS and certain other materials. According to Maguire, the trustee stated: "I'll give you the right to use FACS. I just can't promise you that you have its origin, or where it came from, or exclusive ownership." (<u>See</u> Maguire Dep. 204:18–205:20, Doc. 41 at PageID 1794–95.) Maguire's deposition testimony makes clear that Plaintiffs had no good faith basis—at any time—to assert that FACS was Plaintiffs' trade secret.

12.     Plaintiffs also asserted individual claims against Defendants Bill Shapcott and Jerry Williams, two key members of Cogent's management team. Yet, again, Plaintiffs have proffered no evidence that either Shapcott or Williams had engaged in any wrongful conduct.

13.     Despite their lack of evidence in support of any claim against Williams, Plaintiffs failed to dismiss Williams—even without prejudice—after they were informed that this lawsuit was preventing Williams from obtaining a federal disaster assistance loan that was necessary for Williams to rebuild his home in Baton Rouge, Louisiana after substantial sections of Louisiana experienced massive flooding in August 2016. (Williams Decl. ¶¶ 4-10, Doc. 59 at PageID 2296-97; Southerland Decl. ¶¶ 3-4, Doc. 61 at PageID 2304-05; Doc. 61-1 at PageID 2308; Doc. 61-2 at PageID 2309.)

14.     For Tubergen, this lawsuit was the continuation of a vendetta against him for leaving his employment with HCMM that began with the earlier lawsuit in which HCMM initially sought an injunction against Tubergen in state court. Despite claiming the need for

immediate relief in that action, HCMM filed a voluntary dismissal **with no explanation** the day after the action was removed to this Court. See <u>HCMM, Inc. v. Tubergen</u>, Case No. 1:16-cv-00302 (S.D. Ohio filed Feb. 11, 2016). HCMM then refiled this action against Tubergen. During their depositions, Patrick and Julie Maguire testified they had no basis for suing Tubergen, but that they were "trying to find out" whether he had done something wrong. (See P. Maguire Dep. at 134-135, Doc. 41 at PageID 1724-25; J. Maguire Dep. at 27, Doc. 43 at PageID 1916.)

15.     Plaintiffs' litigation misconduct continued after the Court permitted Mr. Anaya to withdraw as counsel. More specifically, Plaintiffs failed to follow the Court's October 13, 2016 Order by either filing a Notice of Appearance or a Notice of *Pro Se* Representation. Given their *pro se* status at the time, the Court indulged the Plaintiffs and did not immediately dismiss their claims, as it had warned it would do.

16.     Instead of following the Court's October 13, 2016 Order, Plaintiffs filed two Motions to Dismiss their own claims. Neither Motion represented that Plaintiffs had been unable to find new counsel. Instead, those Motions merely indicated that Plaintiffs had been unable to find new counsel on the financial terms they were seeking, <u>i.e.</u>, on a contingency-fee basis.

17.     The Court then scheduled a Settlement Conference for February 16, 2017. Patrick and Julie Maguire and David Pineda attended and were not represented by counsel. They wasted the time and resources of the Court and Defendants by failing to meaningfully engage in the process.

18.     Only a few days later, new counsel made an appearance on behalf of the Ohio Plaintiffs and filed three Motions: (1) a Motion for Additional Time to Respond to Defendants' Motion for Sanctions (Doc. 67); (2) a Motion for a Hearing on Sanctions and Damages (Doc.

68); and (3) a Motion to Enforce Settlement (Doc. 69). Despite now claiming that they had reached a settlement with Defendants on December 9, 2016, the Motion to Enforce Settlement—filed on February 20, 2017—was the first time any Plaintiff informed the Court of an alleged settlement, despite having spent a full day at a Settlement Conference only four days earlier.

19.    On April 3, 2017, in a letter to the Clerk, Plaintiff David Pineda represented that the Florida Plaintiffs had retained counsel and requested that the Court allow "an extension of time of just 10 days" so that their new attorney could apply for *pro hac vice* admission to the Southern District of Ohio. (Doc. 77.) The Court, in its discretion, granted that request on April 7, 2016. No *pro hac vice* application was filed within the ten days.

20.    Despite having been presented with several opportunities to contest the substance of the arguments raised by Defendants in support of their Motion for Attorneys' Fees and Sanctions, Plaintiffs have failed to do so. The Ohio Plaintiffs' argument is limited to blaming their prior counsel (an argument that the Florida Plaintiffs incorporate by reference) and maintaining that, if their claims are dismissed with prejudice, an award of sanctions would be improper. The Florida Plaintiffs' argument is to point the finger at the Ohio Plaintiffs.

21.    The Court also finds that, despite the Ohio (and, by incorporation, the Florida) Plaintiffs' attempts to cast full blame on their prior counsel, both the Ohio and Florida Plaintiffs are no strangers to litigation and are, in fact, experienced litigants. Before filing this action, Plaintiffs—in some instances alone and in others together—had filed at least seven civil actions, and had been defendants in several others. Those actions include:[8]

---

[8] A court "may take judicial notice of … state court proceedings." <u>Scarso v. Cuyahoga County Dep't of Human Servs.</u>, 747 F. Supp. 381, 386 (N.D. Ohio 1989). Here, the Court takes judicial notice of these other actions for the limited purpose of recognizing their existence.

a. <u>Huntington Copper Moody Maguire, Inc. v. Cypert</u>, Case No. 1:04-cv-751 (S.D. Ohio filed Nov. 1, 2004);[9]

b. <u>Huntington Copper, LLC v. Conner Sawmill, Inc.</u>, 09A02-1110-PL-917 (Ind. Super. (Cass County));

c. <u>Pineda v. Popkey</u>, Case No. 11CV80910 (Ohio Com. Pleas (Warren County) filed Nov. 10, 2011);

d. <u>Ripberger, Maguire & Matthews, Inc. v. RDR Consulting LLC</u>, Case No. A1109172 (Ohio Com. Pleas (Hamilton County) filed December 23, 2011);

e. <u>Huntington Copper, LLC v. Maguire</u>, Case No. A1109949 (Ohio Com. Pleas (Hamilton County) filed Dec. 12, 2011);

f. <u>Ripberger, Maguire & Matthews, Inc. v. Pineda</u>, Case No. A1503424 (Ohio Com. Pleas (Hamilton County) filed June 25, 2015);[10]

g. <u>HCMM, Inc. v. Tubergen</u>, Case No. 1:16-cv-00302 (S.D. Ohio Feb. 11, 2016).[11]

22.     The Court further finds that Plaintiffs either knew or should have known that their claims were meritless before filing.   This is particularly true given that the numerous infirmities in Plaintiffs' claims—as acknowledged in Plaintiffs' Motion for Leave to File First Amended Verified Complaint—were made apparent through the course of **Plaintiffs' own deposition testimony**.   There is no reason to conclude that the problems in Plaintiffs' claims were no less apparent, or should not have been known to Plaintiffs, prior to suit ever being filed.

23.     The Court finds that Plaintiffs have willfully abused the judicial process throughout this litigation, and that their bad faith conduct extends back to the period prior to filing this action.

---

[9] Mr. Anaya appeared as counsel on behalf of Huntington Copper Moody & Maguire, Inc. in that action.
[10] Mr. Anaya appeared as counsel on behalf of Ripberger, Maguire & Matthews, Inc. and Patrick Maguire in that civil action.
[11] Mr. Anaya appeared as counsel on behalf of HCMM, Inc. in that civil action.

### (ii)     Conclusions of Law

1.      In the Sixth Circuit, a court may invoke its inherent power to sanction bad faith conduct if it finds: "[1] that the claims advanced were meritless, [2] that counsel knew or should have known this, and [3] that the motive for filing the suit was for an improper purpose such as harassment." First Bank of Marietta, supra, 307 F.3d at 512 (affirming award of attorneys' fees based on court's inherent power where plaintiff advanced claim with no colorable basis and acted in bad faith in filing and prosecuting the claim).

2.      Although the second prong refers to counsel's knowledge, the Sixth Circuit has held that a court may sanction parties pursuant to its inherent power. See, e.g., Stalley v. Methodist Healthcare, 517 F.3d 911, 920 (6th Cir. 2008) ("Our inherent power is not limited to sanctioning attorneys only; we can sanction a party as well."); In re Ruben, 825 F.2d 977, 983 (6th Cir. 1987) ("A district judge has inherent equitable power to award attorneys' fees for 'bad faith' or frivolous conduct of a case.  This power extends to parties as well as attorneys." (internal citation omitted)).

3.      This inherent power includes the ability to "fashion an appropriate sanction for conduct which abuses the judicial process." Chambers, supra, 501 U.S. at 44-45.  "It is well established under Supreme Court and Sixth Circuit precedents that a court's inherent power to sanction serves a punitive purpose, based on the need to deter misconduct and vindicate the court's authority." Williamson v. Recovery Ltd. P'Ship, 826 F.3d 297, 305 (6th Cir. 2016).

4.      Because sanctions pursuant to the court's inherent power serve a punitive purpose, a district court does not abuse its discretion by awarding all attorneys' fees incurred. See, e.g., Chambers, 501 U.S. at 56-57; Stalley ex rel. U.S. v. Mountain States Health All., 644

F.3d 349, 352 (6th Cir. 2011); <u>see also</u> <u>Williamson</u>, 826 F.3d at 306 ("[C]ourts have broad discretion under their inherent powers to fashion punitive sanctions.").

5.       "For a court to impose sanctions under its inherent powers, it is not necessary that the court find that an action was meritless as of filing, or even shortly thereafter.  It can become apparent part-way through a suit that an action that initially appeared to have merit is in fact meritless; parties and attorneys have a responsibility to halt litigation *whenever* they realize that they are pursuing a meritless suit." <u>BDT Prods.</u>, <u>supra</u>, 602 F.3d at 753 n.6 (emphasis in original).

6.       "[I]n order for a court to find bad faith sufficient for imposing sanctions under its inherent powers, the court must find *something more* than that a party knowingly pursued a meritless claim or action at any stage of the proceedings." <u>Id.</u> at 753 (emphasis in original). Here, the Court finds that the "something more" that is required is present based on Plaintiffs' conduct both before and after filing this action.  First, the Court finds that Plaintiffs filed this action for the specific purposes of attempting to put Cogent out of business, to interfere with Cogent's relationship with Tubergen, and to otherwise obtain results that were not intended through the judicial process.  That conduct consisted, in part, in claiming alleged trade secrets protection over items and/or information that were plainly not trade secrets under Ohio law; suing and then refusing to dismiss various parties, including Defendant Tubergen despite Plaintiffs' own testimony that claims against those parties lacked any basis; and attempting to coordinate this lawsuit with the filing of another lawsuit against Cogent by another party in Illinois.  Second, the Court finds that this action was filed in bad faith and for the sole purpose of harassing Defendants and that at no time during this litigation did Plaintiffs seek to prevail on the merits.  Instead, after repeatedly continuing any efforts to obtain injunctive relief, Plaintiffs

attempted to "amend away" various claims their own Motion acknowledged lacked merit, then attempted to dismiss their case altogether – all while seeking to avoid any consequence for their actions. At the same time Plaintiffs were not pursuing their claims for relief in this case, the Ohio Plaintiffs were advising their employees that the litigation was ongoing and contacting Cogent's employees to advise them of the ongoing nature of the litigation. Based on the foregoing, the Court concludes that Plaintiffs knew or should have known that their claims were meritless, yet continued to pursue those claims – even to the point of preventing Defendant Williams from obtaining a federal disaster assistance loan.

7.      The Court concludes that Plaintiffs have misused and abused the resources of this Court through pursuing this litigation. Moreover, the Court rejects the Ohio (and, by incorporation, the Florida) Plaintiffs' attempts to cast blame for this misconduct on their prior counsel as well as the Florida Plaintiffs' attempt to focus the blame on the Ohio Plaintiffs. The Court finds that both the Ohio and the Florida Plaintiffs are responsible for their own—and each other's—misconduct.

8.      The Court further concludes that Plaintiffs' bad faith extends back to the period prior to HCMM filing the initial action against Tubergen during which time the Ohio Plaintiffs actively threatened Tubergen relative to him pursuing employment with Cogent without any factual or legal basis for doing so.

### (iii)    Fees and Costs Requested

1.      Defendants have requested $167,205.67 in attorneys' fees and $29,571.69 in costs.[12]

---

[12] Defendants have indicated that these totals do not include fees or costs incurred since July 31, 2016, which are in excess of $30,000.00. (Southerland Decl. ¶ 5, Doc. 73 at PageID 2360).

2.     The Court has reviewed the Declaration of Jeffrey S. Southerland (Doc. 73),

along with the Attorney (Doc. 73-1 at PageID 2364) and Service Code (Doc. 73-2 at PageID

2365) Summary Reports attached.  The Court observes that, for nine of the ten attorneys listed,

care was taken to reduce the number of hours for which fees are being requested, resulting in a

decrease of nearly $43,000.00.[13]  (Doc. 73-1 at PageID 2364.)  As for the hourly rates requested,

judges in the Southern District of Ohio often refer to the Rubin Committee rates and apply a 4%

annual cost-of-living allowance to measure their reasonableness.  Georgia-Pacific LLC v. Am.

Int'l Specialty Lines Ins. Co., 278 F.R.D. 187, 192 (S.D. Ohio 2010) (citing West v. AK Steel

Corp. Retirement Accumulation Pension Plan, 657 F. Supp. 2d 914, 932 n.4 (S.D. Ohio 2009)).

This Court will do so here.  The hourly rate sought for Denis E. Jacobson is approximately

$328.00, well below what the Court calculates the Rubin Committee rate to be for 2016 for a

Senior Partner ($466.94).[14]  The hourly rate sought for Jeffrey S. Southerland is approximately

$304.00, also significantly below what the Court calculates the Rubin Committee rate to be for

2016 for an Intermediate Partner ($412.69).[15]  The hourly rate sought for Natalie C. Folmar is

$310.00.  In his declaration, Attorney Southerland does not indicate when Attorney Folmar

became licensed to practice law.  Review of the Tuggle Duggins website, however, lists Attorney

Folmar as a "Director," which the Court will interpret to mean a Young Partner.[16]  Her hourly

rate of $310.00 is below what the Court calculates the Rubin Committee rate to be for 2016 for a

Young Partner ($350.69).  The hourly rate sought for Richard W. Andrews is approximately

---

[13] The original number of hours diaried amounted to $210,000.00 in fees.  After these hours were reduced, the fee request dropped to $167,205.67.  (Doc. 73-1 at PageID 2364.)
[14] With 30 years of experience, Attorney Jacobsen would be considered a Senior Partner. West, 657 F. Supp. 2d at 932 n.4.
[15] With 11 years of experience, Attorney Southerland would be considered an Intermediate Partner.  Id.
[16] A Young Partner is defined as an attorney with 6 to 10 years of experience.  Id.

$240.00, again well below what the Court calculates the Rubin Committee rate to be for 2016 for a Senior Associate ($302.12).[17]  The hourly rate sought for Benjamin J. Hintze is $62.00.  The Court need not engage in any further calculation as the Rubin Committee rate for 1983 was $61.77 for a Young Associate.[18]  Defendants also seek $1,368.00 for the 10.20 hours billed by Sharon L. Nester, described as "Staff" in Attorney Southerland's Declaration.  (Doc. 73 at PageID 2360 (¶6.f.).)  The Court will presume that Ms. Nester is a Paralegal.  The hourly rate sought for Ms. Nester is approximately $134.00, slightly below what the Court calculates the Rubin Committee rate to be for 2016 ($138.31).  Accordingly, the Court finds that the hourly rates requested are reasonable for the amount and quality of legal work performed in this action.  The Court also finds that the costs listed on the Service Code Summary Report are reasonable as well.

3.      Plaintiffs have not attempted to argue that the hourly rates of Defendants' counsel are unreasonable or that the fees and costs are excessive, thus bolstering the Court's determination.

4.      The Court further finds that an award of $196,777.36 is necessary and proper on the facts in this action to vindicate the Court and to serve the punitive purpose of sanctions pursuant to the Court's inherent power.

5.      Therefore, Defendants are awarded sanctions against all Plaintiffs, jointly and severally, in the total amount of $196,777.36 for Plaintiffs' bad faith, oppressive, and frivolous litigation tactics and pleadings.

---

[17] With 4 years of experience, Attorney Andrews would be considered a Senior Associate.  Id.

[18] With less than 2 years of experience, Attorney Hintze would be considered a Young Associate.  Id.

### B. Plaintiffs' Motions to Dismiss

Also pending are the Motions to Dismiss filed by the Ohio Plaintiffs (Doc. 53) and the Florida Plaintiffs (Doc. 54). Based on their request that their claims be dismissed with prejudice and their representation to the Court that they have no intent of further pursuing their claims (Doc. 76 at PageID 2387), the Court will grant the Ohio Plaintiffs' Motion to Dismiss and will dismiss their claims with prejudice.

The Court will also grant the Florida Plaintiffs' Motion to Dismiss, but will dismiss their claims without prejudice on the condition that, before refiling such claims, the sanctions award must be paid in full.

## III. CONCLUSION

For the reasons set forth herein, **IT IS HEREBY ORDERED** that Defendants' Motion for Attorneys' Fees and Costs (Doc. 55) is **GRANTED** and that sanctions are awarded in favor of Defendants and against all Plaintiffs, jointly and severally, in the amount of $196,777.36.

**IT IS FURTHER ORDERED** that the Motion to Dismiss Pursuant to FRCP 41(a)(2) filed by HCMM, Inc., Ripberger, Maguire & Matthews, Inc., and Patrick Maguire (the "Ohio Plaintiffs") (Doc. 53) is **GRANTED** and that all claims asserted by those Plaintiffs in this action are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the Motion to Dismiss Pursuant to FRCP 41(a)(2) filed by Concepta Business Solutions, LLC, Sandra Pineda,[19] and David Pineda (the "Florida Plaintiffs") (Doc. 54) is **GRANTED** and that all claims asserted by those Plaintiffs in this action are **DISMISSED WITHOUT PREJUDICE**; however, the Court imposes, as a condition of dismissal, that the sanctions award must be paid in full before those Plaintiffs—individually or in

---

[19] For the final time, the Court notes again that only David (and not **Sandra**) Pineda is a named Plaintiff in this civil action. (Doc. 1 at PageID 1.)

any combination—may refile any claims asserted in this action. The Court further notes that any attempt to refile the claims asserted in this action upon payment in full of the sanctions award could result in additional sanctions.

**IT IS FURTHER ORDERED** that the Counterclaim asserted by Defendant Bret Tubergen against Plaintiff HCMM, Inc. is **DISMISSED WITHOUT PREJUDICE**.

This the 9th day of May, 2017.

S/Susan J. Dlott_____
Judge Susan J. Dlott
United States District Court